| | |
|---|---|
| ------------------------------------------------------------------------X<br>ELENA ALVAREZ,<br><br>        Plaintiff,<br><br>      v.<br><br>ADVANCE AUTO PARTS INC., WORLDPAC INC., ERIC ANDERSON and JEFFREY AGHAHOWA,<br><br>        Defendants.<br>------------------------------------------------------------------------X | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>INDEX NO.<br><br><u>Civil Action</u><br><br>**COMPLAINT** |

Plaintiff ELENA ALVAREZ, by and through the undersigned attorneys, alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this action to remedy:

    a. Discrimination on the basis of gender, race and ethnicity in the terms, conditions and privileges of employment in violation of: (a) the Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. §§ 2000 <u>et seq.</u>; and (b) New Jersey Law Against Discrimination, N.J.S.A. 10: 5-15;

    b. Disparate Treatment on the basis of gender, race and ethnicity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C §§ 2000 <u>et seq.</u>; and the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-15;

    c. Conspiracy to discriminate based on Plaintiff's gender, race and ethnicity;

    d. Retaliation against an employee for having complained of conduct by male employees in violation of Title VII, 42 U.S.C. § 2000e-3(a), and the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-15;

    e. Unlawful discharge with malice or reckless indifference to the federally protected rights of the plaintiff based on her gender, race and ethnicity pursuant to 42 U.S.C.

1

  §§ 2000e-1(a)(1), and the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-15.

 f. Wage discrimination based on gender in violation of 42 U.S.C. §§ 2000e-1(a)(1), and the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-15.

## JURISDICTION

1. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3); and 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367(a), since plaintiff's federal and state law claims arise from a common nucleus of operative facts and are so intertwined as to make the existence of supplemental jurisdiction over the state law claims appropriate.

3. Plaintiff has complied with the prerequisite to jurisdiction under Title VII. On October 26, 2016, Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") alleging that the Defendants discriminated against her based on gender, race and ethnicity. The EEOC issued a Right to Sue letter on May 2, 2017 (attached hereto as Exhibit A).

## VENUE

4. Venue is proper in this judicial district pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1391. Defendants Eric Anderson and Jeffrey Aghahowa are residents of the state in which this district is located, Defendants Advance Auto Parts Inc. and Worldpac Inc. are subject to the court's personal jurisdiction with respect to this civil action, Defendants Advance Auto Parts Inc. and Worldpac Inc. transact a substantial amount of business in this judicial district, and a

substantial part of the events giving rise to this claim occurred in this judicial district.

## PARTIES

5. Plaintiff Elena Alvarez resides at 34 Hemlock Drive, Jamesburg, NJ 08831. At all times relevant to this suit, Plaintiff was an employee of Worldpac Inc., which was purchased by Advance Auto Parts , as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f), from September 29, 2014, until her termination on or around July 21, 2016.

6. Defendant Advance Auto Parts Inc. ("Advance Auto Parts") is a multi-national corporation engaged in the business of selling automotive replacement parts and accessories. Defendant Advance Auto Parts is incorporated in the state of Delaware and is headquartered in Roanoke, Virginia.

7. At all times relevant to this action, Defendant Worldpac Inc. is a wholly owned subsidiary of Defendant Advance Auto Parts engaged in the importation and distribution of original equipment and aftermarket replacement automotive parts for independent service professionals. Defendant Worldpac is incorporated in the state of Delaware and headquartered in Newark, California. At all times relevant to this action, Defendant Worldpac operates a facility located at 300 Herrod Boulevard, Dayton, NJ 08810 ("Dayton Facility").

8. At all times relevant, Defendant Eric Anderson was employed by Defendants Worldpac and Advance Auto Parts at the Dayton Facility.

9. At all times relevant, Defendant Jeffrey Aghahowa was employed by Defendants Worldpac and Advance Auto Parts at the Dayton Facility.

10. At all times relevant to this action, Defendants are "employers" as defined by Title VII of

3

the Civil Rights Act of 1964 and NJLAD. Hereinafter, this complaint will refer to Worldpac and Advance Auto Parts collectively as "Advance Auto Parts Defendants."

## STATEMENT OF FACTS

11. Elena Alvarez is a female of Hispanic origin. She began her employment with Advance Auto Parts Defendants at the Dayton Facility on or around September 29, 2014.

12. Since the start of her employment, Ms. Alvarez was subjected to disparate treatment by her male supervisors. The underlying motive for this disparate treatment was the fact that Ms. Alvarez is a female and of Hispanic origin.

13. Defendant Anderson was Ms. Alvarez's immediate supervisor. Sean Lawrence was the director for the Dayton Facility where Ms. Alvarez worked.

14. Anderson's disparate treatment of Ms. Alvarez began the moment Ms. Alvarez was hired. Anderson was required to train Ms. Alvarez for her position, but refused and failed to do so. This forced Ms. Alvarez to learn her job by asking other employees countless questions and putting forth more time and effort than would have been required had Anderson trained Ms. Alvarez.

15. When Ms. Alvarez requested a sick day, a request all employees are entitled to, Defendant Anderson would complain and make statements like "you need to stop being sick" and "your nose is always runny" as an implication that Ms. Alvarez was lying about her health.

16. Due to Anderson's disparate treatment of Ms. Alvarez, Sean Lawrence directed Ms. Alvarez to begin reporting directly to him.

17. In October of 2015, Sean Lawrence was physically transferred to a location in Flower Mound, Texas. Defendant Anderson took over Mr. Lawrence's position as director of the

Dayton Facility.

18. Due to the fact that a senior officer was no longer present to oversee Defendant Anderson's conduct, Defendant Anderson increased and became more brazen in his disparate treatment of Ms. Alvarez.

19. In January 2016, Ms. Alvarez notified the Advance Auto Parts Defendants about the misconduct of two male employees. The male employees were stealing company time.

20. One of the male employees was not terminated immediately. However, Ms. Alvarez reported him a second time for the same conduct resulting in his termination.

21. In retaliation for initiating his termination, the male employee falsely accused Ms. Alvarez of recruiting for a labor union. The accusation was entirely false and was never substantiated by any evidence.

22. Ms. Alvarez's statement that she was in no way recruiting for a labor union was disregarded, while the male employee's wild, unsubstantiated accusation was given credence. Defendant Anderson jumped on this opportunity as a way to terminate Ms. Alvarez.

23. Ms. Alvarez was placed on administrative leave while Defendant Anderson investigated the matter. Eventually, the investigation found no evidence supporting the accusation and Ms. Alvarez was taken off administrative leave.

24. Following this incident, Defendant Anderson upped his disparate treatment of Ms. Alvarez. Anderson belittled Ms. Alvarez for speaking in Spanish to Spanish-speaking employees and prohibited her from speaking in Spanish.

25. Defendants told Ms. Alvarez to work outside of her office, yet allowed other male managers to remain in offices. Ms. Alvarez was forced to work at a mobile cart where

she had to stand all day and could be observed by everyone in the office.

26. Defendants required Ms. Alvarez to work longer hours than her male manager co-workers. Ms. Alvarez routinely worked 10-14 hour shifts that began at 3:30 A.M.

27. Defendants forced Ms. Alvarez to cover the shifts of her male manager co-workers; Ms. Alvarez was not given any options.

28. Defendant Anderson demanded that Ms. Alvarez not put any complaints concerning her working conditions, co-workers, or supervisors in writing. Instead, Defendant Anderson instructed Ms. Alvarez to communicate her complaints orally to him. The sole reason behind this instruction was to prevent and mitigate the existence of any evidence related to Ms. Alvarez's disparate treatment.

29. Defendant Anderson purposely scheduled simultaneous out-of-state trainings for Ms. Alvarez's entire staff, leaving Ms. Alvarez without her key team members. Defendant Anderson's intention was to cause Ms. Alvarez to struggle in performing her job. No male manager was ever deprived of his team due to a schedule of trainings. In order to cope with the loss of her team, Ms. Alvarez was forced by Defendant Aghahowa to work several 14-16 hour shifts which had a substantially negative effect on her health.

30. Defendant Aghahowa yelled at Ms. Alvarez in front all the male managers for requesting to be taken off the long shifts. Ms. Alvarez reported the matter to Joseph Puzzo who said he would take care of this matter, but did not do so.

31. Defendants continuously withheld and delayed vacation requests from Ms. Alvarez until all other male managers had submitted their own requests. This was the case even when Ms. Alvarez submitted her requests prior to her male manager co-workers. Defendant Anderson's intention was to provide male managers with their desired vacations days

and to leave Ms. Alvarez with the undesired leftovers.

32. In April 2016, several of Ms. Alvarez's family members were victim to an 8.1 magnitude earthquake in Ecuador. Several members of Ms. Alvarez's family died, while others were displaced. Ms. Alvarez requested time off in order to help identify bodies for burial, but her requested was denied, even in the context of this emergency situation.

33. In April 2016, Ms. Alvarez received a poor performance review for 2015 from Defendant Anderson. The performance review "needs improvement" is not given to any employee unless that employee had been written up during the year for something.

34. By contract, Ms. Alvarez had received an "exceeds improvement" for 2014. As a result of the poor performance review, Ms. Alvarez's salary increase and bonus were negatively affected.

## INCIDENT REGARDING TERMINATION

35. On or around July 21, 2016, Defendant Aghahowa, a male supervisor, summoned Ms. Alvarez to a section of a warehouse.

36. Defendant Aghahowa blamed Ms. Alvarez for a pile of garbage in the warehouse and demanded that she take care of it.

37. Defendant Aghahowa purposely waited until Ms. Alvarez's team had left so that she would have no one to assist her.

38. Ms. Alvarez stated that she would take care of the matter by calling maintenance to clear out the garbage. Defendant Aghahowa refused to allow Ms. Alvarez to contact maintenance.

39. Instead, in a manner intended to assert his male dominance over Ms. Alvarez, Aghahowa demanded that she personally clean up the garbage.

40. Ms. Alvarez submitted to Aghahowa's demand and cleaned-up the garbage. During the clean-up, Ms. Alvarez cut her forearm on a loose nail.

41. No male manager had ever been previously required to do the work of maintenance. Defendant Aghahowa, motivated by discriminatory animus and acting in conspiracy with other Defendants, saw it as an opportunity to push Ms. Alvarez to the breaking point.

42. Immediately following the incident described in Paragraph 42, Ms. Alvarez went to complain about Aghahowa's treatment of her.

43. However, a meeting was underway and therefore Ms. Alvarez spoke with Alhaji Thoronka, another male manager about the incident. Mr. Thoronka told Ms. Alvarez to calm down and referred to her as "baby girl." Ms. Alvarez found this referral to be demeaning and insulting.

44. At no point did Ms. Alvarez express an intent to resign from her job.

45. Despite Defendants' misogyny, Ms. Alvarez remained strong in her desire to succeed in her job.

46. Ms. Alvarez left and closed the facility at the other location which was part of her ordinary tasks for the day and prepared to return to work the next day.

47. Several hours later, Ms. Alvarez received a call from Ms. Cindy Jespen from Advance Auto Parts Defendants' human resources department, informing her that she had heard Ms. Alvarez desired to resign and that her resignation was accepted.

48. Ms. Alvarez was stunned by this proposition and informed Ms. Jespen that she did not desire to resign, nor did she state or imply to anyone that she intended or desired to resign.

49. Nevertheless, Ms. Jespen informed Ms. Alvarez that she would be put on administrative

leave while the matter was investigated.

50. Ms. Alvarez was shocked and immediately sent a text message to Joseph Puzzo, another manager for the Advance Auto Parts Defendants.

51. Puzzo did not respond to Ms. Alvarez's text. However, he sent her back a screenshot of the texts that Ms. Alvarez had sent to him. Upon information and belief, Puzzo was trying to forward Ms. Alvarez's texts to Defendant Anderson but accidentally sent them to Ms. Alvarez.

52. Ms. Alvarez received no other response from Puzzo or Defendant Anderson.

53. On July 22, 2016, Ms. Jespen called Ms. Alvarez on a conference call with Defendant Anderson and informed her that her resignation was accepted and that she was no longer an employee for Advance Auto Parts Defendants.

54. Ms. Alvarez repeatedly informed Defendants that she was not resigning and had never expressed a desire to resign.

55. Ms. Alvarez never indicated, either verbally or in writing, an intention to resign from her position with Advance Auto Parts Defendants.

56. Defendants subjected Ms. Alvarez to a hostile and demeaning work environment with hopes that Ms. Alvarez would quit on her own. When Defendants realized Ms. Alvarez would not quit regardless of the discriminatory and demeaning treatment she was subjected to, they decided to unilaterally terminate Ms. Alvarez's employment, solely because she was female and Hispanic.

57. Shortly after Ms. Alvarez's termination, Defendants hired a male manager to assume Ms. Alvarez's position.

58. The entirety of the Defendants' conduct depicts and reveals a company-wide conspiracy

to remove the only female manager from her position.

## WAGE DISCRIMINATION

59. Additionally, Ms. Alvarez was not paid commensurate to male managers.

60. Upon information and belief, employees with an equal amount of experience and doing similar work were paid more than Ms. Alvarez, while employees with less experience than Ms. Alvarez were paid a salary equal to hers simply because the employees were male.

## SEXUAL HARASSMENT

61. Throughout Ms. Alvarez's employment, male employers referred to her as "baby" and "baby girl." Ms. Alvarez was always told to accept this as the culture in the automotive industry.

62. Ms. Alvarez continued to tolerate this kind of behavior but was never comfortable with this type of sexist conduct.

63. Further, Defendants' use of such words to describe further indicate their misogyny and animus towards female employees in a traditionally male industry and work environment.

64. Ms. Alvarez did raise this issue to human resources informally but the response was always dismissive of her complaint as a result Ms. Alvarez did not make any further complaints and tried her best to ignore the harassment.

## COUNT ONE
**(Discriminatory Discharge Based on Sex in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. et seq.)**

65. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-64 herein.

66. Plaintiff is a female and therefore belongs to a class protected under 42 U.S.C. § 2000e. et seq.

67. Plaintiff performed her job properly and sufficiently, all while being subjected to discrimination, harassment, and antics intended to push her to quit her job. Plaintiff was never told by any of her supervisors that her job performance was inadequate.

68. Defendants discharged Plaintiff despite her qualifications and adequate job performance.

69. After discharging Plaintiff, Defendants hired a male to assume Plaintiff's former position.

70. Defendants' discriminatory conduct has caused Plaintiff to suffer loss of wages, benefits, prestige, and mental and emotional distress.

71. Defendants' discriminatory conduct was malicious and recklessly indifferent to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT TWO
**(Discriminatory Discharge Based on Race in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. et seq.)**

72. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-71 herein.

73. Plaintiff is Hispanic and therefore belongs to a class protected under 42 U.S.C. § 2000e. et seq.

74. Plaintiff performed her job properly and sufficiently, all while being subjected to discrimination, harassment, and antics intended to push her to quit her job. Plaintiff was never told by any of her supervisors that her job performance was inadequate.

75. Defendants discharged Plaintiff despite her qualifications and adequate job performance.

76. After discharging Plaintiff, Defendants hired a non-Hispanic male to assume Plaintiff's former position.

77. Defendants' discriminatory conduct has caused Plaintiff to suffer loss of wages, benefits, prestige, and mental and emotional distress.

78. Defendants' discriminatory conduct was malicious and recklessly indifferent to Plaintiff's federally protected rights, entitling Plaintiff to compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT THREE
**(Discriminatory Compensation Based on Sex in Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. et seq.)**

79. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-78 herein.

80. Plaintiff is a female and therefore belongs to a class protected under 42 U.S.C. § 2000e. et seq.

81. Plaintiff was paid less than male co-workers who held similar work experience and held similar positions to Plaintiff. Additionally, Plaintiff was paid equal to male co-workers who held inferior work experience and held subordinate positions than that of Plaintiff.

82. Defendants' discriminatory conduct has caused Plaintiff to suffer loss of wages, benefits, and prestige.

## COUNT FOUR
**(Discriminatory Discharge Based on Race in Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)**

83. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-82 herein.

84. Plaintiff is Hispanic and therefore belongs to a class protected under N.J.S.A. 10:5-1 et

seq.

85. Plaintiff performed her job properly and sufficiently, all while being subjected to discrimination, harassment, and antics intended to push her to quit her job. Plaintiff was never told by any of her supervisors that her job performance was inadequate.

86. Defendants discharged Plaintiff despite her qualifications and adequate job performance.

87. After discharging Plaintiff, Defendants hired a non-Hispanic male to assume Plaintiff's former position.

88. Defendants' discriminatory conduct was malicious and wantonly and willfully disregarded Plaintiff's rights, entitling Plaintiff to punitive damages pursuant to the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-1 et seq.

## COUNT FIVE
**(Discriminatory Discharge Based on Sex in Violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)**

89. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-88 herein.

90. Plaintiff is a female and therefore belongs to a class protected under N.J.S.A. 10:5-1 et seq.

91. Plaintiff performed her job properly and sufficiently, all while being subjected to discrimination, harassment, and antics intended to push her to quit her job. Plaintiff was never told by any of her supervisors that her job performance was inadequate.

92. Defendants discharged Plaintiff despite her qualifications and adequate job performance.

93. After discharging Plaintiff, Defendants hired a male to assume Plaintiff's former position.

94. Defendants' discriminatory conduct has caused Plaintiff to suffer loss of wages, benefits,

prestige, and mental and emotional distress.

95. Defendants' discriminatory conduct was malicious and wantonly and willfully disregarded Plaintiff's rights, entitling Plaintiff to punitive damages pursuant to the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-1 et seq.

## COUNT SIX
### (Discriminatory Compensation Based on Sex in Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.)

96. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-95 herein.

97. Plaintiff is a female and therefore belongs to a class protected under N.J.S.A. 10:5-1 et seq.

98. Plaintiff was paid less than male co-workers who held similar work experience and held similar positions to Plaintiff. Additionally, Plaintiff was paid equal to male co-workers who held inferior work experience and held subordinate positions than that of Plaintiff.

99. Defendants' discriminatory conduct has caused Plaintiff to suffer loss of wages, benefits, and prestige.

## COUNT SEVEN
### (Discriminatory Compensation in Violation of Equal Pay Act of 1963 (29 U.S.C. § 206 et seq.)

100. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1-99 herein.

101. Plaintiff is a female.

102. Plaintiff was paid less than male co-workers who held similar work experience and held similar positions to Plaintiff. Additionally, Plaintiff was paid equal to male co-workers who held inferior work experience and held subordinate positions than that of

Plaintiff.

103. Defendants' discriminatory conduct has caused Plaintiff to suffer loss of wages, benefits, and prestige.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

104. That the Court grant full front pay to Plaintiff;

105. That the Court grant full back pay to Plaintiff;

106. That the Court grant Plaintiff damages for the pain, suffering and emotional distress suffered by Plaintiff as a result of Defendants' actions;

107. That the Court grant Plaintiff punitive damages for Defendants' intentional and willful malicious conduct in discriminating against Plaintiff;

108. That the Court order attorney's fees to Plaintiff pursuant to N.J.S.A. § 10:5-27.1;

109. That the Court order attorney's fees to Plaintiff pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988; and

110. Any other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues in the above-entitled cause of action.

Dated: June 9, 2017

> HUSSAIN & KHAN LLP
> Attorneys for Plaintiff
>
> *[signature]*
> Tariq Hussain, Esq.