UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ELENA ALVAREZ,

    Plaintiff,

v.

ADVANCE AUTO PARTS, INC., et al.,

    Defendants.

Civil Action No. 17-4203 (MAS) (TJB)

**MEMORANDUM ORDER**

**SHIPP, District Judge**

    This matter comes before the Court on Defendants Advance Auto Parts Inc.'s ("Advance" or "Defendant") motion to dismiss. (ECF No. 20.) Plaintiff Elena Alvarez ("Plaintiff") filed opposition (ECF No. 23) and Defendants replied (ECF No. 24). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Advance's motion to dismiss is GRANTED.

**I.    Background**[1]

    Plaintiff was employed by Worldpac Inc. ("Worldpac"), a wholly owned subsidiary of Advance Auto, from September 29, 2014 through July 21, 2016. (Am. Compl. ¶¶ 5, 7.) Worldpac operates a facility in Dayton, New Jersey, where Plaintiff worked ("Dayton Facility"). (*Id.* ¶¶ 7, 12.) On October 26, 2016, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on gender, race and ethnicity. (*Id.* ¶ 3.) On May 2, 2017, the EEOC issued a Right to Sue letter. (*Id.*) On June 9, 2017, Plaintiff filed a Complaint bringing various employment-related causes of action. (Compl., ECF No. 1.) Advance

---

[1] For the purposes of this motion to dismiss, the Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

and then-Defendant Eric Anderson moved to dismiss. (ECF No. 8.) On January 25, 2018, the Court granted the motion, dismissed Anderson from the suit with prejudice, and permitted Plaintiff to file an Amended Complaint. (Jan. 25, 2018 Order, ECF No. 16.) Plaintiff filed an Amended Complaint on February 14, 2018 and brings claims for: (1) discriminatory discharge based on sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) discriminatory discharge based on race in violation of Title VII; (3) discriminatory compensation based on sex in violation of Title VII; (4) discriminatory discharge based on race in violation of the New Jersey Law Against Discrimination ("NJLAD"); (5) discriminatory discharge based on sex in violation of the NJLAD; (6) discriminatory compensation based on sex in violation of the NJLAD; and (7) discriminatory compensation in violation of the Equal Pay Act of 1963. (*See generally* Am. Compl.)

Relevant to the instant motion are the new allegations regarding the relationship between Worldpac and Advance. Plaintiff alleges that: (i) Advance "owned and participated in the management" of Worldpac; (ii) Advance controlled the human resources ("HR") system that Worldpac employees used and provided related technical support; (iii) Worldpac employees received an employee discount at Advance's stores; (iv) Worldpac employees' bonus eligibility was determined by Advance's financial performance; (v) Brad Porschen, employed by Advance, was Advance's on-site HR director at the Dayton Facility; (vi) Porschen hired Defendant Jeffrey Aghahowa; (vii) Patrick Healy, Director of the Dayton Facility, served on Advance's Board of Executives; and (viii) Advance Auto "directly provided [Mr. Healy with] operation mandates for the Dayton Facility" that "were not advisory, but rather final and authoritative." (*Id.* ¶¶ 7(a)-7(i).) Additionally, Eric Anderson and Jeffrey Aghahowa were employed by Worldpac and Advance at the Dayton facility. (*Id.* ¶¶ 9-10.)

## II. Legal Standard

### A. Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

B.   **Title VII and NJLAD**

Title VII prohibits "employers" from discriminating against an individual "with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The NJLAD forbids "employers" from discriminating against an "individual in compensation or in terms, conditions or privileges of employment" based on sex. N.J.S.A. § 10:5-12(a). Accordingly, to hold a defendant liable for discriminatory acts, both statutes require an employment relationship to exist between the parties. *See Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013) (stating that an employment relationship is a prerequisite to a Title VII claim); *Davis v. Moreng Metal Prods.*, No. 14-7256, 2015 WL 13234501, at *3 (D.N.J. Dec. 18, 2015) (stating that the analyses of Title VII and NJLAD claims are generally the same).

To determine "whether multiple companies should be regarded as one entity for purposes of liability" pursuant to Title VII, "the Third Circuit has applied a three-part, disjunctive test." *Cunningham v. Exec. Care of Cherry Hill*, No. 17-2261, 2018 U.S. Dist. LEXIS 41967, at *7 (D.N.J. Mar. 12, 2018). A company and its affiliates are a single employer "(1) when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach; (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining;" or (3) when there has been a substantive consolidation of the entities. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85-86 (3d Cir. 2003). As to substantive consolidation, the Third Circuit has noted that it "is an equitable remedy and is difficult to achieve." *Id.* at 86. In making this determination, a court "focus[es] . . . on the degree of operational entanglement--whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." *Id.* at 87. Factors to be considered include:

(1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (*e.g.*, hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

*Id.* Finally, financial entanglement between the companies is relevant as well. *Id.* at 87-88.

### III. Discussion

#### A. Advance's Position

Advance argues that it cannot be held liable for any alleged wrongful conduct because it was merely Worldpac's parent company, and Plaintiff has failed to plead that Advance was her "employer." (Def.'s Moving Br. 7-15, ECF No. 24.)

Advance asserts that Plaintiff made only conclusory allegations about the companies' operations insufficient to withstand a motion to dismiss. (*Id.* at 9 (quoting Compl. ¶¶ 7(a), 8 (Advance "owned and participated in the management of [Worldpac]" and "influenced, dominated, and controlled [Worldpac].").) Advance argues that the companies have corporate headquarters in different states. (*Id.* at 9-10.) Moreover, even if Worldpac employees utilized Advance Auto's HR system and technical support from Advance for payroll, benefits and/or HR issues, this fact is still insufficient to show that Advance dominated Worldpac's operations. (*Id.* at 10.)

As to control of the Worldpac labor force, according to Advance: (i) the Amended Complaint contains no allegations that Advance shifted employees between Advance and Worldpac or that Advance supervised Worldpac employees' day-to-day functions; and (ii) Plaintiff makes only a conclusory allegation that Anderson was employed by Advance and Worldpac while also alleging that she and Anderson worked at the Dayton Facility, which was operated by Worldpac; and (iii) any influence Advance possessed over Worldpac employee compensation was merely tangential and a product of the parent-subsidiary relationship. (*Id.* at 11-12.) Additionally, even if Porschen was an Advance employee and hired Aghahowa, according to Advance, this fact is

5

insufficient to demonstrate that Advance was involved in Worldpac's daily employment decisions. (*Id.* at 14.) Finally, as to the companies' management, Advance observes that the lone allegation in the Amended Complaint is that Healy was a Director of the Dayton Facility and held a seat on Advance's "Board of Executives." (*Id.* at 15.)

### B. Plaintiff's Position

Plaintiff claims that because she alleges that Advance "committed, or played a role in committing" her wrongful termination and hiring of those who discriminated against her, the only factor relevant to the Court's analysis is the parent's control over hiring and termination decisions of the subsidiary's employees. (Pl.'s Opp'n Br. 2, 7, ECF No. 23.) Plaintiff asserts that the additional facts alleged, outlined in Section I, are sufficient to withstand the motion to dismiss.

## IV. Conclusion

The parties' briefing centers on what appears to be an older legal standard that frames the issue in a different manner than the test set forth in *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85 (3d Cir. 2003). (*See, e.g.*, Def.'s Moving Br. 8 (citing *Martin v. Safeguard Scientifics, Inc.* 17 F. Supp. 2d 357, 362 (E.D. Pa. 1998))); *Nesbit*, 347 F.3d at 85 ("Because the NLRA and Title VII ask whether entities are a single enterprise for different reasons, it does not follow that the NLRB's test is any more relevant to Title VII cases than any of the other tests for determining whether two companies should be regarded as one."). Coupled with the new allegations in the Amended Complaint that speak to the relationship between Worldpac and Advance, the Court finds that Advance has failed to carry its burden to prevail on the motion to dismiss. Accordingly,

IT IS on this 29th day of August 2018, **ORDERED** that Defendants' Motion to Dismiss (ECF No. 20) is **DENIED**.

/s/ M.A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE